UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHARLES EDWARD DAEDA,

    Plaintiff,

v.                                                                   Case No. 2:18-cv-156-FtM-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## **MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for a period of disability and disability insurance benefits ("DIB"). An administrative hearing was initially held before Administrative Law Judge ("ALJ") Sara Alston on July 22, 2016, at which Plaintiff was unrepresented. (Tr. 13, 109-150.) Before ALJ Alston could render a written decision, the case was reassigned to ALJ Hope Grunberg, who held a second hearing on August 10, 2017, at which Plaintiff also appeared without counsel. (Tr. 13, 38-75.) Although ALJ Alston orally approved Plaintiff's DIB claim during the first hearing, ALJ Grunberg ultimately found Plaintiff not disabled from

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 19.)

December 31, 2007, the alleged disability onset date, through December 31, 2011, the date last insured.[2] (Tr. 13-27.)

In reaching the decision, ALJ Grunberg found that Plaintiff's severe impairments included lumbar degenerative disc disease, hypertension with moderate coronary artery stenosis, and early neuropathy. (Tr. 16.) The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work, as follows:

> [Plaintiff] could lift and carry 20 pounds occasionally and 10 pounds frequently. He could stand and/or walk up to six hours and sit six hours of an eight-hour workday. [Plaintiff] could frequently push, pull, or operate foot controls with the bilateral[] lower extremities. He could climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; but cannot climb ladders, ropes, or scaffolds. The claimant should have no exposure to hazards such as unprotected heights and dangerous, moving machinery. He was limited to understanding, remembering, and carrying out simple tasks.

(Tr. 18.) Then, based on the testimony of a Vocational Expert ("VE") and considering Plaintiff's "age, education, work experience," and his RFC, the ALJ concluded that Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (Tr. 26.)

Plaintiff is appealing the Commissioner's decision that he was not disabled from December 31, 2007 through December 31, 2011. Plaintiff has exhausted his administrative remedies and the case is properly before the Court. Based on a review of the record, the briefs, and the applicable law, the Commissioner's

---

[2] Plaintiff had to establish disability on or before December 31, 2011, his date last insured ("DLI"), in order to be entitled to a period of disability and DIB. (Tr. 14.)

2

decision is **REVERSED** and **REMANDED**.

## I. Standard

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff raises two issues on appeal. First, he argues that ALJ Alston and ALJ Grunberg failed to obtain a valid waiver of counsel. Plaintiff argues that,

while he agreed to proceed without counsel during the first hearing, "ALJ Alston effectively revoked any waiver of counsel by adjourning the hearing specifically for [Plaintiff] to consult with counsel at her orders." (Doc. 23 at 10.) Plaintiff further argues that since ALJ Alston determined that Plaintiff required counsel, ALJ Grunberg's failure to obtain a valid waiver of counsel during the second hearing shows that Plaintiff "cannot be found to have validly made an informed waiver of counsel." (*Id.*)  Second, Plaintiff argues that ALJ Grunberg had a special duty to develop a full and fair record, but failed to do so despite having notice that relevant evidence was missing from the record.  (*Id.* at 19-23.) Plaintiff contends that he was prejudiced by ALJ Grunberg's failure to develop the record with respect to missing relevant medical evidence regarding Plaintiff's heart attack, heart problems, and visual impairments, as well as medical records from a treating physician.  (*Id.* at 21-23.)  Plaintiff also argues that the record was not adequately developed with respect to his mental RFC, where the evidence arguably supported the need for a consultative examination or a medical expert's testimony at the hearing.  (*Id.* at 22-23.)  Defendant, on the other hand, argues that Plaintiff knowingly and voluntarily waived his right to representation, and even if Plaintiff's waiver was invalid, Plaintiff failed to show prejudice.  (Doc. 25.) The Court will address each argument in turn.

"A Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ." *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (per curiam).  The claimant must be notified of his

statutory right prior to the hearing. *Cowart v. Schweiker*, 662 F.2d 731, 734 (11th Cir. 1981). To effectively waive the right to representation, the claimant must be "properly apprised of [his] options concerning representation" and must knowingly and intelligently waive the right to counsel. *Newberger v. Astrue*, No. 3:07-CV-585-J-HTS, 2008 WL 299012, at *1 (M.D. Fla. Feb. 1, 2008), *aff'd sub nom. Newberger v. Comm'r of Soc. Sec. Admin.*, 293 F. App'x 710 (11th Cir. 2008) (internal citations and quotation marks omitted). Each claimant must be notified in writing of the options for obtaining counsel, including the availability of free legal services and the statutory cap on attorney's fees. *Id.* at *2 (internal citations and quotation marks omitted). Also, "when it appears the claimant may be incompetent or have a mental illness, the ALJ should explain with even greater care the right to counsel as well as the role of an attorney in the hearing to ensure the claimant understands these subjects." *Id.*

> Further:
>
> Whether or not the applicant is represented, the ALJ still has a duty to develop a full and fair record. When the right to representation has not been waived, however, the hearing examiner's obligation to develop a full and fair record rises to a special duty. This special duty requires, essentially, a record which shows that the claimant was not prejudiced by lack of counsel. In carrying out this duty, the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. Under this standard, we are not required to determine that the presence of counsel would necessarily have resulted in any specific benefits in the handling of the case before the ALJ. Nevertheless, there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record.

*Brown*, 44 F.3d at 934-35 (internal citations and quotation marks omitted).

Here, ALJ Alston held the first hearing on July 22, 2016 and ALJ Grunberg held the second hearing on August 10, 2017. Plaintiff was advised of his right to representation several times prior to the hearings.[3] Plaintiff appeared without counsel at the first hearing on July 22, 2016 before ALJ Alston.[4] (Tr. 111-12.) The following colloquy took place:

> ALJ: . . . Mr. Daeda, you are not represented by counsel. I must assure on the record that you understand your rights to representation. Did you receive the hearing acknowledgment and its enclosures?
> CLMT: Yes, I received it here in [INAUDIBLE].
> ALJ: Alright. Did you understand the information?
> CLMT: Yeah, it seemed to be straightforward and simple.
> ALJ: Okay. Alright. You have a right to representation. Do you wish to proceed without a representative.
> CLMT: Yes.

---

[3] Prior to said hearings, Plaintiff received several notices advising him of his right to representation. For example, the June 22, 2016 Notice of Hearing stated, in relevant part:
> You may choose to have a representative help you. We will work with this person just as we would work with you . . . . Many representatives charge a fee. Some representatives charge a fee only if you receive benefits. Others may represent you for free. Usually, your representative may not charge a fee unless we approve it.

(Tr. 204.) The Notice of Hearing was also accompanied by an information pamphlet titled "Your Right to Representation," which provided information about obtaining legal representation, including information about fees and the availability of free services. (Tr. 209-10.) Plaintiff received the same information on three occasions when he received his Notices of Hearing dated December 12, 2016 (Tr. 244, 249-50), February 14, 2017 (Tr. 268, 273-74), and June 14, 2017 (Tr. 292, 297-98).

[4] It appears that Plaintiff retained the law firm of Kushner & Kushner on September 17, 2014, but counsel withdrew from the case on April 20, 2016. (Tr. 170, 199.) Furthermore, Plaintiff retained attorney Bill Berke on July 21, 2016 (Tr. 228-31), but Mr. Berke was initially unaware of the July 22, 2016 hearing or that Plaintiff attended the hearing alone. (Tr. 231.)

6

> ALJ: All right [sic]. So let the record reflect that the claimant has normally waived his right to representation.

(*Id.*)

Soon thereafter, Plaintiff stated he "was basing [his] whole case on the grid rule" and appeared confused about the date last insured, date of disability onset, and age requirements. (Tr. 115.) In response to Plaintiff's apparent confusion, the ALJ stated: "Mr. Daeda, let me tell you – let me share something with you. A lot of people think that they can represent themselves, but to . . . do that, you have to be familiar with the law and the fact[s] – and the subject matter of the law." (*Id.*) ALJ Alston continued, "I . . . grant you that it's not a very difficult thing to do, but most people are better suited to have someone represent them who's trained and experienced in this particular law." (Tr. 116.) ALJ Alston again explained that Plaintiff would have to prove that he was limited to less than sedentary work as of the DLI, and that his age at that time, rather than his current age, was controlling. (*Id.*) In response, Plaintiff stated: "Yeah. Well, I submitted the paperwork, so you're saying the grid rules are not applicable in my case even though I'm 53, going on 54?" (*Id.*) ALJ Alston repeated what Plaintiff had to establish and finally stated: "If I think that you . . . are better suited, I'll make an executive decision and decide . . . go get your [representative], okay?" (*Id.*) Plaintiff responded in the affirmative and ALJ Alston continued:

> I think you're a little conflicted about whether or not you can truly handle your case. I mean, I will – if you say, Judge, I got this, I'll let it go but if, you know, at some point, you said I think I need more expertise included to [sic] this case, then I'll let you get one, okay?

7

(*Id.*)  Plaintiff responded by stating that he had submitted information "on the heart that shows all the diagnoses with the clogged artery in the heart."  (Tr. 117.)  Rather than continue to address Plaintiff's decision to proceed without counsel, despite his apparent lack of understanding of some of the basic requirements for proving his case, ALJ Alston proceeded to ask Plaintiff about his medical impairments.  (Tr. 117-24.)

As the hearing progressed, ALJ Alston asked Plaintiff why prior counsel had withdrawn from his case and Plaintiff responded that "there was never much interaction from day one between us – and if I can remember medications here." (Tr. 125.)  ALJ Alston explained that "you'll be a little exasperated because you feel like they're not doing [anything], but . . . they are doing something.  It's not readily apparent to you.  I'll grant you this, sir, you had a sedentary job.  It's going to be tough for you to prove that you're not able to do your sedentary job." (*Id.*) Plaintiff responded by stating that "it'd be pretty easy if you look at the medications I take."  (*Id.*)  The ALJ again shifted focus to Plaintiff's medical conditions (Tr. 125-126), but shortly thereafter stated: "this is what I want to tell you . . . I'm going to let you get a lawyer.  I know you feel as though you can handle this, but you were 49 years old.  After your date last insured expired, you were still under 50."  (Tr. 126.)  After Plaintiff responded that he "did not understand that part," the ALJ and Plaintiff engaged in the following exchange:

> ALJ:  Sir, look at me.  Trust me on this.  You need Mr. Cushner [sic].
> CLMT:  Well, I don't know.

8

> ALJ: You need a lawyer or a representative, or you're going to say, Judge, that's okay. I think I know better. I'll go without one.
> CLMT: Well, it's – I do have a lot of records and a lot of information there. It's just –
> ALJ: I know sir, but . . . it's not making your case. You've got to prove you were disabled before December 31, 2011.
> CLMT: Well, I thought you had to prove that I was disabled before the last day of work, that's what I though you had to do.

(Tr. 127.) The ALJ and Plaintiff again engaged in a discussion regarding Plaintiff's burden of establishing that he was limited to sedentary work as of the DLI or earlier. (Tr. 128.)

After obtaining additional testimony from Plaintiff regarding his medical conditions and from the VE, ALJ Alston ultimately found that Plaintiff was disabled based on his need to elevate his legs for a few hours every day due to swelling. (Tr. 134-35; Tr. 139 ("I'm going to find you disabled, Mr. Daeda.").) However, Plaintiff appeared to believe he was entitled to payments from his alleged disability onset date of December 31, 2007, while ALJ Alston explained that he could only receive payments for the 12 months prior to his September 12, 2014 application date, rather than from the 2007 onset date. (Tr. 139-40.) Plaintiff insisted that medical records that were missing from the record would establish a disability onset date of 2007, that "it's the representative that set it up that way for 2007, Cushner and Cushner [sic], they set it up for the date." (139-46.) The ALJ again explained that she could find Plaintiff "disabled back then," but "[y]ou still [are not] going to get paid back then." (Tr. 146.) The ALJ finally stated "I'll do this for you. I will withhold judgment. I'll let you go back and find []

a representative and you come back here in two months, how about that?" (*Id.*)

Plaintiff and the ALJ continued to address Plaintiff's misunderstanding regarding

the disability onset date, in part, as follows:

>ALJ:  Okay -- call a rep, can I get paid back that far?
>CLMT:  What's that?
>ALJ:  You call and ask them, can I get back to 2007 if I filed my application in 2014?
>CLMT:  Um-hum.
>ALJ:  Seven years.
>CLMT:  Yeah, I don't know.  They left me with the impression that that's the way they set it up.
>ALJ:  All right [sic].  That's enough.  I'll go back and review this and I'll find the best date I think is supported by the record based on your testimony of elevating the lower extremity waist high.  Look for support and go from there, okay?
>CLMT:  All right [sic].  Maybe you can call the law firm because they're the ones that set up the date.
>ALJ:  They [are not] my lawyer[s]. They're your lawyer[s].
>CLMT: Oh, okay.  You're not allowed to talk to them.
>ALJ:  They've withdrawn actually.

(Tr. 147.)

After the initial hearing, Plaintiff contacted Bill Berke, the attorney Plaintiff

retained one day prior to the first hearing.  (Tr. 231.)  Attorney Berke urged

Plaintiff to accept the ALJ's favorable decision and not argue a "moot point"

regarding the DLI and onset date.  (Tr. 231-33.)  In his withdrawal letter dated

September 26, 2016, attorney Berke explained that Plaintiff had retained him on

July 21, 2016, the day before the first hearing, but that he was initially unaware

that a hearing before the ALJ was scheduled for July 22, 2016 or that Plaintiff

had attended the hearing alone.  (Tr. 231.)  The letter stated:

> Since August, I have reviewed the hearing transcript, and discussed with Mr. Daeda what occurred at his hearing. I have urged the claimant to accept what appeared to be your proffered amended onset date, and I have attached a chain [of] emails between us to give you an idea about what was discussed.
>
> Unfortunately, I do not believe that Mr. Daeda is really capable of understanding the relevant period vs. first month of entitlement vs. date last insured vs. retroactive benefit period. ***He has a gross misunderstanding and inability to interpret the regulations***— even though he truly believes he is articulate and capable. I have tried my very best to help him[,] but he is insisting on the fact that he knows best and wants to proceed without representation.

(Tr. 231 (emphasis added).) Rather than heed Mr. Berke's advice, Plaintiff continued to press the same arguments via correspondence with ALJ Alston. (*Compare* Tr. 231-41 *with* Tr. 536-37.)

Before ALJ Alston could render a written decision, she became unavailable due to illness and the case was transferred to ALJ Grunberg.[5] (Tr. 13.) Plaintiff appeared before Judge Grunberg for a second hearing on August 10, 2017. (*Id.*; Tr. 38-75.) ALJ Grunberg explained to Plaintiff that ALJ Alston had taken extended leave before issuing a decision, and asked Plaintiff whether he objected to ALJ Grunberg acting as the ALJ in his case; Plaintiff responded that he did not object. (Tr. 40.) Plaintiff, however, interjected that ALJ "Sarah Alston, she did verbally, in our first hearing . . . grant me approval verbally." (Tr. 40-41.) ALJ Grunberg clarified that because ALJ Alston had not issued a decision, ALJ

---

[5] Plaintiff was not informed of this until the second hearing. (Tr. 13.)

Grunberg would have to do a full review of the medical evidence and would issue her own decision. (Tr. 41.) ALJ Grunberg then proceeded to note that:

> [A]t the hearing you had with Judge Alston, she did give you your rights to representation and she explained to you that you had the right to be represented. I understand that there [were] some issues with the representative that you had at the time. You asked the person to withdraw and that you are here today without a representative, is that accurate?
> CLM: Yes.
> ALJ: I am going to proceed with today's hearing[.]

(Tr. 45.) ALJ Grunberg found that Plaintiff had failed to establish he was disabled on or before the DLI. (Tr. 26.)

### A.     *Plaintiff's Improper Waiver of Representation*

First, Plaintiff argues that ALJ Alston and ALJ Grunberg failed to obtain a proper waiver of counsel. Plaintiff argues that although he verbally waived counsel at the beginning of the first hearing, ALJ Alston's decision to adjourn the hearing specifically so that Plaintiff could consult with counsel "effectively revoked any waiver of counsel." (Doc. 23 at 13.) Plaintiff also points to ALJ Alston's repeated assertions that Plaintiff needed an attorney given Plaintiff's "misunderstandings regarding the legal issues and the role of counsel," and especially given that "he was contesting a fully favorable decision." (*Id.*)

However, Defendants argue that Plaintiff knowingly and voluntarily waived the right to counsel where he had received prior written notices explaining his right to counsel in detail. (Doc. 25 at 4-7.) Defendant also argues that Plaintiff was well informed regarding his right to counsel since he had previously retained

two firms to represent him in connection with his claims.  (*Id.* 7-8.)  Furthermore, Defendant contends that by providing repeated verbal encouragement for Plaintiff to seek the assistance of counsel, and postponing the hearing so Plaintiff could do so, ALJ Alston "clearly informed [Plaintiff] of his right to representation."  (*Id.* at 8.)  Defendant also argues that by appearing at the second hearing without counsel, Plaintiff "demonstrate[d] waiver of his right to a representative."  (*Id.*)  Defendant also rejects Plaintiff's contentions that he lacked understanding and was confused about his right to counsel.  (*Id.* at 9.)  Defendant argues that "there is no evidence Plaintiff had a mental impairment that prevented him from understanding his right to representation."  (*Id.*)  In furtherance of this argument, Defendant attempts to distinguish the instant case from *Torres v. Acting Comm'r of the Soc. Sec. Admin.*, No. 6:15-CV-1208-ORL-MCR, 2017 WL 604017, at *4 (M.D. Fla. Feb. 15, 2017), where the Court found the claimant had not voluntarily waived the right to representation because she suffered from an intellectual impairment, failed to understand the ALJ's questions concerning representation, and where the ALJ failed to accurately interpret claimant's answers as to whether she wanted to proceed without representation.  (Doc. 25 at 9-10.)

As the record shows, Plaintiff received several notices from the Commissioner explaining the right to representation prior to the hearings.  (Tr. 204, 209-10, 244, 249-50, 268, 273-74, 292, 297-98.)  Plaintiff also appears to have verbally waived his right to representation at the beginning of the first hearing before ALJ Alston.  (Tr. 111-12.)  However, ALJ Alston's repeated

13

statements regarding Plaintiff's inability to represent himself at the hearing and her adjournment of the hearing so that Plaintiff could consult with counsel, establishes that Plaintiff's waiver of representation was, in essence, revoked or rendered moot where ALJ Alston determined that Plaintiff indeed needed counsel.  The July 22, 2016 hearing transcript is replete with evidence that Plaintiff was unable to understand the process or to represent himself, especially considering that he argued against a favorable decision.

Given that ALJ Alston raised these serious concerns during the first hearing, ALJ Grunberg was on notice regarding Plaintiff's inability to proceed without representation.  Moreover, contrary to Defendant's assertions, there is additional evidence in the record about Plaintiff's possible mental and/or cognitive impairment.  A State agency Report of Contact dated January 5, 2015 by L. Robinson, states: "Incomplete information provided by the claimant on his paper 3368.  ***Prior telephone observation with claimant indicates claimant does suffer from [a] cognitive disorder***.  It has been impossible to collect information from him to support his claim.  He has trouble remembering and providing information when initially requested on 09/18/14."  (Tr. 360, 550 (emphasis added).)  Similarly, notes from a Field Office Disability Report completed by L. Robinson also indicate that Plaintiff had been previously contacted for information, but it was "[e]xtremently difficult to obtain the information" and Plaintiff "could not answer the questions" as "he could not

14

remember specific information . . . [and] kept repeating to himself, 'I already answered that . . . I already completed that.'" (Tr. 362-64.)

Thus, ALJ Grunberg had a heightened duty to ensure that Plaintiff understood his right to representation and the role of an attorney in the proceedings. The testimony does not demonstrate that ALJ Grunberg fulfilled this heightened duty during the second hearing. In fact, ALJ Grunberg perfunctorily asked about Plaintiff's prior counsel and simply asked Plaintiff to confirm that he had been previously advised of his right to representation and that he was going to proceed without counsel. (Tr. 45.) Also, there is no evidence that Plaintiff has ever signed a voluntary waiver of his right to representation. *See* HALLEX I-2-6-52 ("Once the ALJ has determined that the claimant is capable of making an informed choice, he or she will either secure on the record the claimant's decision concerning representation or obtain from the claimant a written waiver of the claimant's right to representation, which will be marked as an exhibit.").

Defendant's arguments regarding Plaintiff's lack of a mental impairment and his alleged ability to waive counsel are unpersuasive. It is apparent that Plaintiff was confused about the process as he believed the purpose of the second hearing was to resolve the onset date and retroactivity of benefits since he believed ALJ Alston's finding of disability was final. (Tr. 40-41.) ALJ Grunberg did not follow up on whether Plaintiff had intelligently waived his right to representation, even though she was on notice that Plaintiff was under the

mistaken assumption that ALJ Alston's disability determination was final. Because Plaintiff was confused about the purpose of the second hearing, and given that ALJ Grunberg failed to establish Plaintiff's waiver of counsel was intelligent and voluntary, Plaintiff's purported waiver was insufficient. *Cregar v. Astrue*, No. 3:07-CV-1008-J-JRK, 2009 WL 383388, at *7 (M.D. Fla. Feb. 13, 2009) (finding that the claimant had not knowingly and voluntarily waived the right to representation where the claimant "was confused about the process, as he had not even reviewed his file prior to the first hearing," and noting that "the ALJ should have explored other options available to" the claimant "to ensure [claimant] was both aware of these options, and willing to forego them").

Here, ALJ Grunberg was already on notice regarding Plaintiff's inability to represent himself based on the challenges ALJ Alston encountered in explaining basic concepts to Plaintiff during the first hearing. Thus, ALJ Grunberg erred in failing to address whether Plaintiff was "capable of making an informed choice" regarding representation, especially where Plaintiff expressed he was under the mistaken impression that his disability claim had already been approved and that the purpose of the second hearing was to determine the onset date, and where there was evidence that Plaintiff potentially suffered from a cognitive impairment. Based on the foregoing, the Court cannot conclude that Plaintiff knowingly and voluntarily waived his statutory right to representation.

### B. The ALJ Failed to Fully Develop the Record

ALJ Grunberg had a special duty to develop a full and fair record where Plaintiff's purported waiver of counsel was invalid. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) ("Where the right to representation has not been waived, the hearing examiner's obligation to develop a full and fair record rises to a special duty.") However, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded . . . for further development of the record." *Newberger*, 2008 WL 299012 at *3 (internal citations and quotation marks omitted). This "requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Townsend v. Comm'r of Soc. Sec.*, 555 F. App'x 888, 891 (11th Cir. Feb. 7, 2014) (per curiam) (internal citations and quotation marks omitted).

Here, Plaintiff suffered prejudice because ALJ Grunberg failed to meet her special duty to develop the record in light of Plaintiff's lack of waiver of representation, where the evidence pointed to missing relevant medical reports, as well as evidence that Plaintiff potentially suffered from a mental or cognitive impairment. Specifically, Plaintiff argues that the record was deficient and that the ALJs failed to develop the record with respect to his 2005 heart attack, visual impairment, and mental functioning, as well as the ALJ's failure to obtain medical

17

records from Dr. Horace White.  (Doc. 23 at 21-23.)   The Court also acknowledges Plaintiff's concerns that "there is no opinion from either an examining or treating physician detailing Mr. Daeda's functional abilities, nor was the opinion from [the] non-examining State agency physician based on the complete evidence of record, as it cited only three medical records."  (Doc. 22-23; Tr. 164.)

The Court finds that there are evidentiary gaps in the record which resulted in less than a fair hearing and that Plaintiff was ultimately prejudiced.  *See Graham*, 129 F.3d at 1422.  As such, Plaintiff suffered unfairness or clear prejudice by his lack of representation.  *See Townsend*, 555 F. App'x at 888.  Therefore, because Plaintiff was denied the right to a full and fair hearing, this case is due to be remanded to the Commissioner for further proceedings.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this Order, pursuant to sentence four of 42 U.S.C. § 405(g).

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3. In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2),* Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov.

13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE and ORDERED** in Jacksonville, Florida on March 29, 2019.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record